Mr. Justice Shepard
delivered the opinion of the Court:
This action is peculiar, and confessedly without precedent. This, however, affords no reason why plaintiff should not be permitted to maintain his action if his case can be brought within the operation of any one of the principles of the common law which obtain in cases of injury to person or property.
*551 Plaintiff concedes that for the spoken words set out in the declaration, “slander will not technically lie, for the wrong consists in more than mere spoken words ”; but insists that a special action on the case lies because of the defendant’s wrongful conduct in taking away his telephone number, continuing his subscription against his will, and by the words, “ He does not answer,” spoken to callers, creating the impression that he was neglectful of his business, thereby injuring his trade.
It does not appear from the declaration that plaintiff had any property right or interest in the original call number of the telephone assigned to him at the time of his subscription; nor does it appear that the defendant did not have the right, for its own convenience and advantage, to change said number. There is no fact alleged which tends to show that plaintiff was injuriously affected by said change.
The declaration does not show the terms of the contract of subscription, or what right plaintiff had to cancel the same and order the telephone removed. It may, however, be inferred from a further allegation, that without regard to the right to cancel as exercised by plaintiff, the subscription “had expired” — presumably by its own limitation — • and still defendant treated plaintiff as a subscriber.
Grant that this was' technically a wrong, yet it is not charged to have been done with malice, and is not claimed, of itself, to have worked any damage. The sole injury and ground of damage lies in the iteration and reiteration of the declaration, to continuous callers, that “ He ” (meaning plaintiff) “ does not answer.” Plaintiff contends that these words were inevitably injurious to his business,- wherefore no proof of special damage is required, and no items of special damage sustained, nor names of customers actually lost, need to be alleged.
A modern writer on this subject has said, and We think with accuracy, that: “Language must be either (1) such as necessarily, in fact, or by a presumption of evidence, occasions damage to him of whom, or of whose affairs, *552 it is concerning; or (2) such as does not necessarily, or as a necessary consequence, but does by a natural and proximate consequence, occasion damage to him of whom, or of whose affairs, it; is concerning; or (3) such as neither as a necessary, nor as a natural and proximate consequence occasions damage to him of whom, or of whose affairs, it is concerning. The loss which ensues as a necessary consequence is termed damage; the loss which ensues as a natural and proximate consequence is termed special damage. One and the same set of words may both necessarily occasion damage, and also occasion special damage as a necessary consequence.” Townshend on Libel and Slander, Sec. 146.
This writer further says: “Publication of words of the second class does not per se confer a prima facie right of action and is not per se a prima facie wrong. It confers a right of action only in those cases in which, as a natural and proximate consequence of the publication, loss (special damage) has in fact ensued to him of whom, or of whose affairs, the language was concerning.” Id., Sec. 148.
Commenting on the legal results of these three distinct classes of words spoken of another, the learned author, from whom we. have so liberally quoted, says that words of the first class “import damage”; that of those of the second, the damage must be proved as a fact; whilst those of the third “ cannot in any event confer a right of action.” Id., Sec. 149.
We think it very clear that the words spoken in this instance do not fall within the first of the classes above mentioned. They cannot naturally and necessarily work injury to the plaintiff. It cannot be said within reason that the necessary consequence of the words must have been ' to injure plaintiff in his business generally. They do not “ import damage ” of that kind.
Nor do we think that they can be said to fall properly within the second class, unless, at least, they were uttered in malice,, and of that there is no allegation. Counsel, with *553 commendable frankness, admits that malice could not be proved; hence, properly, it was. not alleged.
While it is not clear that, from any point of view, the words do not belong elsewhere than in the third class, we do not find it necessary to so hold. But we are clearly of the opinion that to maintain the action at all, plaintiff must allege not only that the words were maliciously spoken, but also the particular facts tending to show that he had sustained some special damage as the natural and proximate consequence thereof. This view finds support in a recent well considered English case, which is at the same time authority for the principle claimed by plaintiff to govern his case, namely, that spoken words, though not constituting technical slander, may nevertheless furnish the foundation for special action on the case for damages actually and directly occasioned thereby. Ratcliffe v. Evans, L. R., 1892, 2 Q. B. Div., 524. The facts of that case, as 'well also as the pleading, make it quite different from this. Defendant, the publisher of a newspaper, published a statement that plaintiff, a manufacturer of engines, etc., had retired and closed up his business. The statement was false and was published with the intent to injure plaintiff. Plaintiff was permitted to show damage in a general falling off of his business which could not be accounted for on any other ground than as a result of the publication. The right of action for words spoken, from which actual damage ensues, is clearly maintained in the following language: “That an action will lie for written or oral falsehoods not actionable per se or even defamatory, where they are maliciously published, where they are calculated in the ordinary coursé of things to produce, and where they do produce actual damage, is established law. Such an action is not one of libel or slander, but an action on the case for damage wil-fully and intentionally done without just occasion or excuse, analogous to an action for slander of title. To support it actual damage must be shown, for it is an action which only lies in respect of such damage as has occurred.” *554 Recognizing the injustice that might be done, in many instances, by confining a plaintiff to proof of the loss of particular custom, etc., in cases of false and malicious publications, the court laid down what seems to us, with some qualification, to be a just and reasonable doctrine, as follows: “In all actions accordingly on the case, where the damage actually done is the gist of the action, the character of the acts themselves which produce the damage, and the circumstances under which the acts are done, must regulate the degree of certainty and particularity with which the damage ought to be stated and proved. As much certainty and particularity must be insisted on, in both pleading and proof of damage, as is reasonable, having regard to the circumstances and to the nature of the acts themselves by which the damage' is done.” This must be taken, we think, with the qualification, evidently understood in the same opinion, that the falsehood must have been spoken under circumstances showing an intent to work an injury, and must have been such as, in) the ordinary course of things, to have directly produced the general damage that has in fact occurred.
Riding v. Smith, 1 Exchequer Div., 91 (1876), is strongly relied on by appellant as establishing a principle within the scope of which this case may be brought. Whether the facts of that case itself brought it properly within the same principle, is very much doubted in Ratcliffe v. Evans, supra. Plaintiff was a grocer and draper, and his wife assisted him in carrying on the business. Defendant falsely charged the wife with acts of adultery committed on the business premises. It was held admissible to show a general loss • of custom without giving the names of customers actually lost by reason of the slanderous words. Kelly, C. B., said: “The utterance, concerning another, of words, the natural consequence of uttering which would be to injure the trade and prevent persons from resorting to the place of business, and it so lead to loss of business, is actionable. It is of little consequence whether the wrong is slander, or whether *555 it is a statement of any other nature calculated to prevent persons resorting to the shop of plaintiff.” Pollock, B., said: “The courts have at all times been extremely careful as to verbal slander; but where you find that the nature of the words is such that damages would naturally follow from their being uttered, and that damage has arisen, then there is cause of action.”
The difficulty with this last case, which has caused its soundness to be doubted in the application of the principle enounced to the fact, is that, though the words are defamatory of the wife, and might even “ import damage ” of a nature incidental thereto, it is questionable if they could, under a general allegation of damage to the husband's business, be shown to be the direct and proximate cause thereof. Recognizing the principle controlling that case, without pausing to consider its applicability to the facts thereof, it is sufficient to say that the facts of this case are essentially different. In both Riding v. Smith and Ratcliffe v. Evans, there was wilful falsehood. It was printed in the one and spoken in the other. In the one the words were not defamatory, but it is easy to perceive that the publication was made to injure the plaintiff’s business. It was especially aimed thereat, and could have had no other object. Besides, a marked distinction has generally been made between words spoken merely, and words printed, because of the necessarily more extended circulation of the latter. In the other case, the words spoken made a charge of vile conduct by the wife, committed at the place where she assisted in carrying on1 the business of her husband, which,' if true, might subject her to prosecution, and would necessarily cause her society to be shunned by good people. As she was known to be an assistant in the business, at the very place, too, where the commission of the act was charged, it was thought reasonable and just to hold that the words were actionable by the husband, not in the technical action of slander, but in the special action on the case, because the utterance and circulation of the *556 vile charge were naturally calculated to prevent persons generally from resorting to the shop of plaintiff.
As we have said, the case at bar’presents a very different state of facts. The words, of themselves, considered in the view most favorable to plaintiff’s contention, have no necessary relation to his business. They were not false, though it may be granted they were calculated to create a false impression. They were not spoken in malice, or with intent to injure plaintiff in his business. Malice is an essential ingredient of such an action. If it cannot be reasonably inferred from the nature of the words and the circumstances of their utterance, it must be proved as an independent fact. But had these words been maliciously spoken, it is still difficult to see how they could have affected plaintiff’s business injuriously. Consequently we think it was necessary also to allege facts from which it might appear that actual damage did follow as a direct and proximate result. See Pollard v. Lyon, 91 U. S., 225 ; Wilson v. Dubois, 35 Minn., 471 ; Cook v. Cook, 100 Mass,, 194. _
_ Without denying that, in many instances, the benefit of the uncertainity, as well as the remoteness of the damage done, has been given to the wrongdoer, when, in the interest of justice and with better reason, it might have been given to the injured party, still we think that, in this particular case, the remoteness and uncertainty are so great that it would not be in the interest of justice to make a precedent that might be productive of much harassing litigation without compensating benefit to society.
We are of opinion that the court did not err in sustaining the demurrer, and the judgment will be affirmed, with costs to the appellee ; and it is so ordered.